UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS S. KIRK and PAULINE R. KIRK,

              Plaintiffs,

      v.

HOLLAND AMERICA LINE, INC., a
Washington corporation; HOLLAND AMERICA
LINE N.V., a Netherlands Antilles corporation;
and HAL Nederland N.V., a Netherlands Antilles
corporation,

              Defendants.

CASE NO. C06-0536-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 18), Plaintiffs' Opposition thereto (Dkt. No. 23), and Defendants' Reply (Dkt. No. 27). Having considered the papers submitted by the parties on these motions and finding oral argument unnecessary, the Court finds and rules as follows.

I.     **BACKGROUND**

Plaintiffs brought this action in law and in admiralty after sustaining serious injuries, which arose out of an incident that occurred while Plaintiffs were en route away from the cruise vessel M/V ROTTERDAM. Plaintiffs began their eighteen-night "re-positioning" cruise on April 1, 2005 in Ft.

ORDER – 1

1   Lauderdale, Florida.  Their final port of call was in Venice, Italy on April 29, 2005.

2          Most, if not all, of the approximately 1,300 passengers on the cruise were "retirees" ranging in

3   age from their mid- to late-60s to late-80s.  Plaintiff Thomas Kirk was 82 years old and Plaintiff Pauline

4   Kirk was 78 years old at the time.  Plaintiffs allege that considerable confusion and disorganization

5   preceded the disembarkation at the final port of call at Venice.  Plaintiffs allege that a significant number

6   of the passengers were using various types of canes and walkers to get around.  The passengers waited in

7   the ship's theater before disembarking, but received no instruction regarding disembarkation procedures.

8   After a substantial wait, the passengers began departing the vessel, proceeding on the vessel's gangway,

9   then to a downward escalator, and then to the baggage claim.  Plaintiffs allege that no cruise ship

10  personnel assisted with the disembarkation, that no one from the vessel was available to provide

11  instructions on where to go or to monitor safety, and that no ship personnel were stationed near the

12  escalator, because the staff was allegedly preoccupied with preparations to receive a new batch of 1,300

13  passengers.  It was on the escalator ride that Plaintiffs' injuries occurred.

14         It is undisputed that a woman near the bottom of the escalator dropped a number of bulky boxes

15  and that her attempt to retrieve them set off a chain reaction of escalator passengers falling back on each

16  other, in a domino effect up the descending escalator.  Plaintiffs fell and they were both rendered

17  unconscious after hitting their heads.  Plaintiff Pauline Kirk's hair was caught in the escalator step.  Both

18  received first aid at the scene.  Plaintiff Thomas Kirk suffered head and back injuries.  His wife was

19  hospitalized for five days and received twenty stitches for her head wound.

20         Defendants request summary judgment on two grounds.  First, they contend that they are entitled

21  to judgment as a matter of law because they (a) owed no duty to provide reasonably safe egress to

22  Plaintiffs once they were on the escalator and (b) owed no duty to warn Plaintiffs of hazards associated

23  with escalators.  Second, Defendants argue that even if a duty existed, they could not be found to have

24  breached such a duty in any event.

25  //

26  ORDER – 2

1    **II.    ANALYSIS**

2          Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and

3    provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings,

4    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

5    that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

6    a matter of law." FED. R. CIV. P. 56(c).  In determining whether an issue of fact exists, the Court must

7    view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in

8    that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84

9    F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence

10   for a reasonable factfinder to find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  The inquiry is

11   "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

12   so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.

13         A carrier owes a "duty of reasonable care under the circumstances of each case" to those aboard

14   the ship for legitimate purposes.  *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632

15   (1959); *see also In re Catalina Cruises, Inc.*, 137 F.3d 1422, 1425 (9th Cir, 1998).  Because the

16   definition of reasonable care depends on the circumstances, it may be very high or something less.  *In re*

17   *Catalina*, 137 F.3d at 1425.  The duty of reasonable care applies not only to times when the ship is under

18   way, but also requires that a carrier "must 'render such services as are reasonably necessary to get a

19   passenger safely ashore.'"  *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1290 (9th Cir. 1997)

20   (quoting *Marshall v. Westfal-Larsen & Co.*, 259 F.2d 575, 577 (9th Cir. 1958)).  Accordingly,

21   disembarking a cruise boat is activity within the scope of a carrier's duty.

22         Defendants do not dispute these basic principles, but rather argue that Plaintiffs were "safely

23   ashore" once they left the gangway and stepped onto the escalator.  Here, the escalator was owned and

24   operated by the land-based Port of Venice Terminal facility, not the cruise ship Defendants.  Defendants'

25   position is that a carrier should not be liable for any injury that occurs on the premises of a terminal or

26   ORDER – 3

port not controlled by the carrier. Defendants suggest that the question of whether they had a duty under the circumstances of this case is a distinct legal question of first impression because the scope of "egress" has not been delineated with respect to the *final* port of call. Defendants accordingly request a ruling that leaving the gangway is, as a matter of law, the endpoint of a carrier's duty. However, the Court finds that there is ample authority to assess the question of duty in this case and that crafting such a new bright line rule is both unnecessary and inappropriate.

It is clear that with respect to mid-cruise stopovers, the duty of reasonable care encompasses disembarkation and embarkation. In the Ninth Circuit,

> Where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the sine qua non of the cruise. In such a situation, the shipowner has a duty to exercise a high degree of care in seeing to the safe embarking and disembarking of the passengers.

*Isham v. Pacific Far East Line, Inc.*, 476 F.2d 835, 837 (9th Cir. 1973). Of course, "any vessel which engages in the carriage of passengers for hire has a duty to provide for embarking and disembarking at the beginning and end of the voyage" as well. *Id.* In the Ninth Circuit, the scope of the duty "depends ultimately on the totality of the circumstances."[1] *Id.*

In *Isham*, before holding that the carrier had no duty during a passenger's stopover excursion, the court found that a significant factor was that the plaintiff had not been *induced* to travel with the carrier by the opportunity for that stopover. *Id.* Here, however, it is difficult to imagine that Plaintiffs were not "induced" by the final destination of Venice when they had sailed from Florida in this "re-positioning" cruise, within the meaning of *Isham*. Thus, while Venice was the termination point, the Court is not persuaded that the duty for disembarking there was all that different from the duty associated with prior stopovers. More importantly, Defendants have cited no law to the contrary. They simply urge the Court

---

[1] Defendants' criticism of Plaintiffs' reliance on *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1262 (1977), and its totality-of-the-circumstances analysis—due the fact that the Warsaw Convention controlled in that case—is off-point. The Court need not rely on the Warsaw Convention or on *Maugnie* to consider the totality of the circumstances when determining how to define "disembarking" or "egress," because *Isham* requires such an analysis in any event.

ORDER – 4

1   to adopt a new rule drawing the line at the gangway.  The Court declines to do so.

2          Because "admiralty law has generally prohibited carriers from limiting their liability for

3   transporting passengers from ship to shore," *Chan*, 123 F.3d at 1292, the Court must carefully consider

4   whether Plaintiffs have presented sufficient facts to render their escalator ride part of their egress from the

5   ship.  The "totality of the circumstances" here certainly includes such factors as whether Plaintiffs had any

6   clear alternatives and whether they were still being controlled by the cruise ship because the escalator was

7   their only option upon leaving the gangway.  Indeed, as they have described the process of egress,

8   Plaintiffs were funneled—without assistance, notice of alternatives, or instructions—directly from the

9   ship's gangway (where Defendants concede their duty still existed) to the escalator where they were

10  injured.  Assuming these facts to be true, the Court can find no principled way to draw the "no duty" line

11  that Defendants seek.  Rather, establishing such a rigid rule actually would require the Court to ignore the

12  totality of the circumstances.

13         Defendants argue that if the Court could allow them to be held liable for injuries on the "land-

14  based" escalator, a slippery slope will ensue, rendering them liable as well for injuries at any terminal's

15  food court, baggage claim, and even the parking lot.  (*See* Defs.' Mot. 9 n.3.)  The Court disagrees,

16  particularly because the facts of this case, as supported by evidence submitted with Plaintiffs' opposition

17  to this motion, suggest that the group movement in effect when the incident on the escalator occurred

18  probably had an identifiable stopping point.  Nevertheless, the facts are not well-enough developed at this

19  juncture to determine exactly where the line demarcating the end of Defendants' duty should be.

20  Accordingly, the Court cannot find as a matter of law that such a line is merely a function of stepping off

21  the vessel's gangway regardless of the circumstances.  The Court also declines Defendants' invitation to

22  artificially constrain Defendants' duty simply because doing so would benefit the cruise ship industry.

23  (*See* Defs.' Mot. 5; Reply 11.)

24         Plaintiffs have raised material issues of fact sufficient to prevent summary judgment on the issue

25  of the scope of Defendants' duty under the circumstances of this case.  Plaintiffs are entitled to attempt to

26  ORDER – 5

1   prove that they were "disembarking" the vessel when they were injured.  Similarly, if Plaintiffs were

2   disembarking and a duty existed, Plaintiffs have raised genuine issues of material fact as to whether that

3   duty was breached.

4        In addition to their arguments regarding the scope of their duty of reasonable care during egress,

5   Defendants argue that they had no duty to warn Plaintiffs of risks associated with using the escalator,

6   because escalators are not unique to sea travel and the risks are commonly known.  The duty to warn

7   requires a warning only where a carrier has "actual or constructive notice of [a] risk-creating condition."

8   *Keefe v. Bahama Cruise Line Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).  Whether there is a foreseeable

9   risk is a jury question.  *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 813 (9th Cir. 2002).  The

10  Court cannot find as a matter of law that the risks associated with the use of this escalator—particularly if

11  it is determined to be part of the disembarkation—are not unique to cruises.  Moreover, even if the

12  escalator is unremarkable (*i.e.*, not unique to maritime travel), the Court cannot find as a matter of law

13  that there was no duty to warn on the facts of this case.  Plaintiffs have raised sufficient facts that may

14  show that there were non-obvious risks of which Defendants had actual or constructive notice.

15  Defendants are not entitled to summary judgment on this issue.

16  **III.    CONCLUSION**

17       For the reasons set forth in this Order, the Court DENIES Defendants' Motion for Summary

18  Judgment.

19       SO ORDERED this 10th day of August, 2007.

20

21                                        John C. Coughenour
                                          United States District Judge

22

23

24

25

26  ORDER – 6